STATE, RESPONDENT, v. SIEFF, APPELLANT.

(No. 3,979.)

(Submitted October 15, 1917.   Decided October 30, 1917.)

[168 Pac. 524.]

*Criminal Law—Malicious Burning of Property—Information— Amendment—Defective Verdict—Circumstantial Evidence— Insufficiency.*

Criminal Law — Malicious Burning of Property — Information — Proper Amendment.
1.   An information charging defendant with the malicious destruction of property, instead of with the malicious burning thereof, which latter is made a felony by section 8748, Revised Codes, was properly permitted to be amended by substituting the word "burning" for the word "destruction," in the absence of a request by defendant for a continuance or a showing that the evidence he was prepared to offer would not be equally applicable to the facts charged in the information as amended.

Same—Defective Verdict—Power of Court.
2.   Under section 9323, Revised Codes, the jury, after bringing in a verdict of guilty for the malicious destruction of property, was properly directed to retire for further deliberation and return a form of verdict, under the information above, authorized by law.

Same—Clerk of District Court—Verdict—Filing-mark—Effect.
3.   The act of the clerk in marking an insufficient verdict as "filed" was a mere irregularity, which could not affect the substantial rights of the defendant or prevent the jury from further deliberating of their verdict or returning a proper one.

Same—Circumstantial Evidence—Sufficiency—Rule.
4.   Circumstantial evidence must point unmistakably to accused's guilt and be irreconcilable with any other rational hypothesis.

Same—Conviction—Evidence Required.
5.   The guilt of one charged with crime must be established beyond a reasonable doubt; mere suspicions or probabilities are insufficient.

Same—Circumstantial Evidence—Insufficiency.
6.   Evidence tending to show that defendant, charged with maliciously burning some hay in the stack on land not far distant from his own, was absent from his home on the night of the fire, made false statements as to his whereabouts, and gave voice to expressions of ill-will toward the owner thereof, was not alone sufficient to warrant conviction.

[As to the necessity that circumstantial evidence, in order to convict of crime, must exclude every reasonable hypothesis except the defendant's guilt, see note in Ann. Cas. 1913E, 428.]

Authorities passing on the question of *corpus delicti* in arson are collated in notes to 16 L. R. A. (n. s.) 285; L. R. A. 1916D, 1299.
On proof of *corpus delicti* in criminal case, generally, see note in 68 L. R. A. 33; specifically as to arson, see page 55 of said note.

*Appeal from District Court, Dawson County; C. C. Hurley, Judge.*

Louis Sieff was convicted of maliciously burning property, and appeals from the judgment and an order denying him a new trial. Reversed and remanded.

*Mr. H. J. Haskell* and *Mr. J. A. Slattery,* for Appellant, submitted a brief, and *Mr. Sharpless Walker,* of Counsel, a supplemental one; *Mr. Slattery* argued the cause orally.

In a prosecution for arson or for the malicious burning or destruction of property, it is necessary for the state to prove beyond a reasonable doubt that the fire was of incendiary origin and that it did not arise from natural or accidental causes; also the state is required to produce evidence which directly connects the accused with the crime; likewise the burden is on the state to show that accused was personally present when the fire is alleged to have been set by him. (*State* v. *Pienick,* 46 Wash. 523, 13 Ann. Cas. 800, 11 L. R. A. (n. s.) 987, 90 Pac. 645; *State* v. *McLarne,* 128 Minn. 163, 150 N. W. 787; *State* v. *Delaney,* 92 Iowa, 467, 61 N. W. 189; *Gerke* v. *State,* 151 Wis. 495, 139 N. W. 404; *Heidelbaugh* v. *State,* 79 Neb. 499, 113 N. W. 145; *People* v. *Fairchild,* 48 Mich. 31, 11 N. W. 773; *Commonwealth* v. *Wade,* 17 Pick. (34 Mass.) 395; *People* v. *Fitzgerald,* 156 N. Y. 253, 50 N. E. 846; *Strong* v. *State* (Miss.), 23 South. 392; *Shannon* v. *State,* 57 Ga. 482, 2 Am. Crim. Rep. 56; *Spears* v. *State,* 92 Miss. 613, 16 L. R. A. (n. s.) 285, note, 46 South. 166; *State* v. *Rhodes,* 111 N. C. 647, 15 S. E. 1038; *Jones* v. *Commonwealth,* 103 Va. 1012, 49 S. E. 663; *State* v. *Morney,* 196 Mo. 43, 93 S. W. 1117; *Commonwealth* v. *Phillips,* 12 Ky. Law Rep. 410, 14 S. W. 378; Wharton's Crim. Evidence, 10th ed., sec. 333; 5 Corpus Juris, 572; 2 R. C. L. 514, 515.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Woody* argued the cause orally.

The *corpus delicti,* in a case of arson, consists of two elements, the fire and the cause of the fire, and although the first of these

elements is usually established by direct evidence, both of these elements may be proven by circumstantial evidence. (3 Bishop's New Criminal Procedure, sec. 53, subd. 7; 2 Wharton's Criminal Law, sec. 1062; 5 Corpus Juris, 579, 580; 2 R. C. L. 513–515; 3 Cyc. 1009.) Here the fire was proven by direct evidence, the cause of the fire being proven by circumstantial evidence. The testimony is amply sufficient to overcome any presumption that the fires were accidental, and to prove that the fires were of incendiary origin. (*Westbrook* v. *State*, 91 Ga. 11, 16 S. E. 100; *Davis* v. *State*, 141 Ala. 62, 37 South. 676; *State* v. *Jacobson*, 130 Minn. 347, 153 N. W. 845; *People* v. *Stewart*, 163 Mich. 1, 127 N. W. 816; *Spears* v. *State*, 92 Miss. 613, 16 L. R. A. (n. s.) 285, 46 South. 166; *State* v. *Pienick*, 46 Wash. 523, 13 Ann. Cas. 800, 11 L. R. A. (n. s.) 987, 90 Pac. 645.)

The facts and circumstances surrounding any one case, as disclosed by the evidence, are so essentially different from those surrounding another case that it is almost impossible to say that because the testimony in the one case was not sufficient, in another case it was not sufficient. However, we call attention to the following authorities holding evidence sufficient to sustain a conviction: *People* v. *Bernstein*, 250 Ill. 63, 95 N. E. 50; *Brooks* v. *State*, 51 Ga. 612; *People* v. *Stewart*, 163 Mich. 1, 127 N. W. 816; *Morris* v. *State*, 124 Ala. 44, 27 South. 336; *Commonwealth* v. *Quinn*, 150 Mass. 401, 23 N. E. 54; *State* v. *Cohn*, 9 Nev. 179; *People* v. *Levine*, 85 Cal. 39, 22 Pac. 969, 24 Pac. 631; *Spears* v. *State*, 92 Miss. 613, 16 L. R. A. (n. s.) 285, 46 South. 166; *State* v. *Pienick*, 46 Wash. 523, 13 Ann. Cas. 800, 11 L. R. A. (n. s.) 987, 90 Pac. 645.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Louis Sieff was convicted of willfully and maliciously burning three stacks of hay belonging to H. S. Cutting, and has appealed from the judgment and from an order denying him a new trial.

1. In the original information the crime was designated the malicious destruction of property, but the facts alleged constitute

[1] a felony defined by section 8748, Revised Codes. Over de-
fendant's objection the information was amended by substituting
the word "burning" for the word "destruction" in the designa-
tion of the crime. In this no error was committed. The grade
of the crime charged does not depend upon the appellation given
it by the public prosecutor, but upon the facts stated. It was not
necessary to mention the crime by name. The information would
have been sufficient if the offense had been referred to merely
as a felony. (Rev. Codes, sec. 9148.) The amendment related
to a matter of form, and not of substance, and was authorized
by section 9108, Revised Codes. The defendant did not ask for
a continuance or suggest to the court that his rights would be
prejudiced or that the evidence he was prepared to offer would
not be equally applicable to the facts charged in the information
as amended. (*State* v. *Duncan*, 40 Mont. 531, 107 Pac. 510.)

2. The verdict as first returned found the defendant guilty of
malicious destruction of property. This verdict was delivered to
[2, 3] the clerk, and by him indorsed "filed," but the court an-
nounced that it would not be accepted, and the jury was directed
to retire for further deliberation. Later a verdict was returned
which found the defendant guilty as charged in the information.
It is elementary that a party cannot be charged with one crime
and convicted of another independent offense. The verdict first
returned was insufficient in that it did not respond to the issues
tried. (12 Cyc. 690.) The malicious destruction of property is
not a crime the commission of which is included in the crime of
willful and malicious burning of property defined by section
8748, and it was therefore the right and duty of the trial court
to require the jury to return some form of verdict authorized by
law, or report a disagreement. (Rev. Codes, sec. 9323.) The
act of the clerk in indorsing his file-mark upon the first verdict
was, at most, a mere irregularity which could not affect adversely
any substantial right of the accused. So long as the jury had
not been discharged from consideration of the case, it was sub-
ject to the orders of the court.

3. To warrant a conviction in this case it was indispensable that the state prove: First, a willful and malicious burning of the property in question; and, second, that the defendant committed the crime. Assuming for the purpose of this appeal that the *corpus delicti* is established, the material inquiry presented by this record is: Does the evidence fix the guilt upon defendant?

Aside from evidence tending to show that the fire was of incendiary origin, there was introduced testimony descriptive of Cutting's premises, and which concerned particularly the relative locations of his buildings, the haystacks in question, and some fences and roads, but this evidence is practically meaningless. It was given with reference to two maps with certain marks and figures upon them which were before the witnesses, but which were not introduced in evidence and are not before us. Whatever value the evidence may have had, it is not suggested that it tended to connect the defendant with the commission of the crime.

We agree with the Attorney General that his *résumé* of the evidence upon the branch of the case now under consideration comprehends every material fact concerning which the state's witnesses testified. Those facts are:

About 7:30 o'clock on the evening of September 30, 1915, the defendant left his home riding a black horse belonging to Frank Lacrousiere, for the purpose, as he declared, of getting some cattle which a man had for him. About 10 o'clock of the same evening Lacrousiere, Marie Purdy and Jessie Purdy, who were staying at defendant's house, discovered that Cutting's haystacks were on fire. The hay was near the Cutting home, about a mile from and in plain view of defendant's residence. About a half hour later defendant returned, coming from the direction of Johnson's, riding in a gallop or running his horse, and, when asked by Lacrousiere if he had seen the fire, he asked where, and when told at Cutting's, he replied: "It serves the son-of-a-bitch right; he had it coming." Defendant then remarked to Lacrousiere: "If anybody asks you if you saw the fire, just tell them you saw it in the morning." On the morning following Lacrou-

siere complained that his horse which defendant had ridden was badly wire-cut, but defendant denied any knowledge of it, and said the horse was not cut when he returned the night before. There was fresh blood on the horse and on the chaps which defendant wore. To the Misses Purdy defendant remarked two or three times: "If anybody asks where I was last night or what I was doing while you were here, tell them you don't know anything about Louis Sieff's business." In response to an expression of sympathy for Mr. Cutting by Marie Purdy, defendant said: "Anybody that will take the handle off his pump to keep people from getting water can't expect anything else." To the sheriff, more than a month later, defendant at first stated that he was not away from home on the night of the fire and did not know of it until the morning following. When informed that Lacrousiere and the Purdy sisters had been interviewed, defendant admitted that he was away from his home, but declared that he was looking after his cattle, and that he rode a gray horse, not a black one. Lacrousiere testified that he had never been to Cutting's place because defendant had told him that Cutting was not a nice fellow. The testimony introduced on behalf of the defendant did not aid the prosecution in any respect; on the contrary, it tended to exonerate the accused.

Viewed in the light most favorable to the state, this evidence [4] falls far short of the requirements of the statute. By the widest stretch of the imagination these facts cannot be so arrayed that it can be said they point unmistakably to defendant's guilt, and are altogether irreconcilable with any other rational hypothesis; and this is the test in this state applicable to every criminal case in the trial of which the state relies, as in the instance, upon circumstantial evidence. (*State* v. *Postal Telegraph-Cable Co.*, 53 Mont. 104, 161 Pac. 953; *State* v. *Chevigny*, 48 Mont. 382, 138 Pac. 257; *State* v. *Suitor*, 43 Mont. 31, Ann. Cas. 1912C, 230, 114 Pac. 112.)

There is not a suggestion in the record that the defendant was [5, 6] about the Cutting premises on the night of the fire; that

anyone was seen in the vicinity of the hay about the time the fire started; that any person was observed leaving the scene of the crime about the time the fire was discovered, or at all, or that any tracks were discoverable leading from the haystacks in the direction of defendant's place or elsewhere. So far as this record discloses, the defendant was not nearer than a mile to the hay in question on the night it was burned. True the defendant was away from home, which afforded him an opportunity to commit the crime; but the evidence also discloses that others in the neighborhood were absent from their respective residences at the same time, each with an equal opportunity. The defendant may have had ample justification for his expression of ill-will or lack of sympathy toward Mr. Cutting; but, whether he had or not, such expressions do not disclose a willingness or purpose to commit a felony and are not inconsistent with the defendant's innocence. If proof of this character will support a conviction, then no man may safely tell the truth about his neighbor unless the truth commands a eulogy. This is not common sense and is not the law. However obliquitous lying may be from a moral standpoint, it is not *per se* a crime in this state, and proof that defendant made false statements is not sufficient to show that he willfully and maliciously set fire to the hay in question. It must be borne in mind that the law does not call upon defendant to explain his absence, his apparent falsehoods, or his animosity toward the prosecuting witness. The burden was upon the state throughout to establish his guilt beyond a reasonable doubt. (Sec. 8028, Rev. Codes.) While this evidence would be material and relevant in corroboration of other incriminating facts and circumstances, it has little probative value standing alone. At most, it does not do more than cast a suspicion upon the defendant, and mere suspicions or probabilities, however strong, are not sufficient basis for a conviction. (*State v. McCarthy*, 36 Mont. 226, 92 Pac. 521; *State v. Taylor*, 51 Mont. 387, 153 Pac. 275.)

The judgment and order are reversed and the cause is remanded for a new trial.

.          .          *Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.