J. J. MICKELSON, Trustee in Bankruptcy of the Estate of Wirt Cook, an individual doing business as St. Paul Sporting Goods Co., Plaintiff,

v.

The HOMELAND INSURANCE COMPANY OF AMERICA, a corporation, Defendant,

and

United States of America, Intervener.

J. J. MICKELSON, Trustee in Bankruptcy of the Estate of Wirt Cook, an individual doing business as St. Paul Sporting Goods Co., Plaintiff,

v.

PACIFIC NATIONAL FIRE INSURANCE COMPANY, a corporation, Defendant,

and

United States of America, Intervener.

Civ. Nos. 2485, 2486.

United States District Court
D. Minnesota, Third Division.
July 13, 1955.

O'Brien & Kronebusch, by W. M. Kronebusch, Minneapolis, Minn., for plaintiff.

Sam Levin, Chicago, Ill., and Bowen & Bowen, LeRoy Bowen, Minneapolis, Minn., for defendant Pacific Nat. Fire Ins. Co.

Thomas, Bradford & King, Paul C. Thomas, St. Paul, Minn., for defendant Homeland Ins. Co., of America.

George E. MacKinnon, U. S. Atty., and Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn., for intervener, United States.

DONOVAN, District Judge.

Plaintiff, as trustee, brings these suits against the defendant insurance companies to recover for loss and damage by fire under contracts of insurance issued to the insured prior to his bankruptcy. Plaintiff contends defendants are liable for the fire damage sustained, to be prorated, pursuant to the terms and amount of coverage of each policy. Defendants contend that the policies are void because the fire was set by the insured.[1]

The sole issue is one of fact. Was the fire incendiary in origin? There is no dispute as to the liability of the defendant companies pursuant to the coverage contracted for, provided the fire was not intentionally set by, for, or on behalf of the insured.

This is a civil action. It does not partake of a criminal prosecution. The rule

---

1. The rights of the intervener under its tax lien were protected by stipulation of the parties in open court.

of proof beyond a reasonable doubt must give way to that of burden of proof in a civil action.

Plaintiff, having established the existence of the policies and the agreed value of the loss, rested. Defendants thereupon set out to establish the elements of arson. At the outset it may be noted that this is unlike a case in which there is evidence that the insured asked another to set the fire or was aided in so doing. The proof was directed towards circumstances seeking to link the bankrupt alone with the setting of the fire.

In view of the fact that the evidence upon which the defense rests is entirely circumstantial, a rather detailed statement of the facts is essential to an understanding of the issues raised.

The fire occurred around midnight on Wednesday, October 8, 1952. The insured, Wirt Cook, left the premises where he conducted business as St. Paul Sporting Goods Company, at about 4 p. m. and proceeded to his home on Mississippi River Road, where he had dinner with his family. He then drove to the Dyckman Hotel in Minneapolis for a .7 p. m. appointment with a salesman of sporting goods. Following this meeting, he left about 9:30 p. m. by automobile, alone, for an appointment with a school official at White Bear, Minnesota, in connection with a possible sale of paraphernalia for high school sports. Arriving at White Bear at about 10 p. m., he stayed until about 10:30 or 10:45 p. m. He then left for his home, arriving there at about 11:30 p. m. He was then informed by his wife that she had just had a telephone call advising that the store of the assured was on fire. While waiting for his wife to dress for the purpose of accompanying him, Cook received a confirming telephone call relative to the fire from Officer James Feigh of the St. Paul Police Department, between 11:30 p. m. and midnight.[2]

The insured and his wife drove to the store around midnight. Upon arrival, Cook was not allowed to enter the store. A short time thereafter he was questioned by representatives of the Fire Department.

Following a thorough investigation by the St. Paul Fire and Police Departments, it was concluded by investigators that two separate fires had been set in the store shortly before midnight of October 8, 1952. Evidence of a third fire in the basement, which had occurred at some prior date, was also observed. Paul J. Gillen, a member of the St. Paul Police Department, specializing in "in-

---

2. Defendants place emphasis on inconsistent testimony based on pre-trial depositions as to times of departure and arrival. While the law of the forum must be applied to the instant case (see Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188), it will be helpful to consider sound law not opposed to that declared by the Supreme Court of Minnesota, and as discussed, infra.

In State v. Porter, 63 S.D. 581, 262 N.W. 94, 96, the court, in a criminal case, commented as follows:

"Were it not for the inconsistency in the statements of these defendants regarding their whereabouts at the time the fire occurred, we seriously doubt whether there would be any claim now made that this record is sufficient to sustain a conviction. However, the burden is upon the state to implicate the accused in the burning of this building, and evidence which merely raises a suspicion of guilt is not sufficient. The fact that these defendants lied (if they did lie) about their whereabouts on the night of the fire cannot, in the absence of other incriminating facts, sustain this conviction. The Montana court was confronted in the case of State v. Sieff, 54 Mont. 165, 168 P. 524, 525, with a situation similar to that now confronting us, and in the opinion filed in that case stated: 'However obliquitous lying may be from a moral standpoint, it is not per se a crime in this state, and proof that defendant made false statements is not sufficient to show that he wilfully and maliciously set fire to the hay in question. * * * While this evidence would be material and relevant in corroboration of other incriminating facts and circumstances, it has little probative value standing alone. At most, it does not do more than cast a suspicion upon the defendant, and mere suspicions or probabilities, however strong, are not sufficient basis for a conviction.'"

ternal security and arson," made a thorough investigation as to the cause of the two first-mentioned fires, based on evidence then found; and later disclosed his conclusion that the two fires had been purposely set.[3]

[2] The discovered evidence pointing to arson was the insured's financial difficulties and the undisputed fact that his only employee at the store "locked up" the store and tried the door in the presence of the employee's wife at about 6 p. m. on the day of the fire. Further, that when the fire department, which was housed about a block away, responded to the fire call, it found the store door "unlocked". That Cook was asked to submit to a lie detector test and after first submitting to it, and it not being concluded on the first day, thereafter refused to go on with it upon advice of counsel.[4]

■ Resort must be had to the substantive law of Minnesota. Counsel for defendants have orally argued and briefed the evidence and the law. Defendants argue that "it is only necessary to prove a defense by a preponderance of the evidence", and throughout their briefs they emphasize "that circumstantial evidence is sufficient to sustain a conviction for arson and also to sustain the defense in an insurance suit." In this connection it should be said that in criminal prosecutions where the question of arson arises, evidence of the insured's outstanding obligations is relevant as bearing on motive.[5] But mere motive alone is not sufficient to support a conviction of arson, and where no benefit from insurance would accrue to accused, no inference of motive may be drawn from the fact that there is insurance coverage.[6]

■■ There is nothing in the record to overcome plaintiff's case other than the circumstantial evidence outlined by the witnesses Gillen and Zenke as investigators for the city of St. Paul, and Mr. Herbert Meyer, Deputy State Fire Marshal.[7]

Despite the strong case made by the defendants to the effect that the fire appeared to be incendiary in origin, there is no sufficient basis for a finding of fact to that effect. There is not the slightest suggestion in the record of the instant case that charges were preferred against the insured. The circumstances are such as to lead to suspicion of arson, but suspicion is most unsatisfactory as a basis for a finding of fact.[8]

---

3. The witness was sufficiently qualified by showing that he had had considerable experience in investigating fires of incendiary origin over a period of years. State v. Kolander, 236 Minn. 209, 52 N. W.2d 458, 463.

4. In the light of the decision of the Minnesota Supreme Court in the Kolander case, supra, evidence of the insured's refusal to carry on the lie detector test is of no help to defendants.

5. Defendants cite:
   Thoreson v. Northwestern National Ins. Co., 29 Minn. 107, 12 N.W. 154; State v. Lytle, 214 Minn. 171, 7 N.W.2d 305; State v. Roth, 117 Minn. 404, 136 N.W. 12; State v. Rosenwieg, 168 Minn. 459, 210 N.W. 403.

6. State v. Whisler, 231 Iowa 1216, 3 N.W. 2d 525, 528; State v. Porter, supra, 262 N.W. 94, 97. However, defendants argue the bankrupt would have benefited.

7. Defendants had the affirmative of proving by a preponderance of evidence that

Cook set the fire. Schornak v. St. Paul Fire & Marine Insurance Co., 96 Minn. 299, 104 N.W. 1087. Defendants were obliged to show not only that the fire was set, but that Cook was intentionally responsible for its setting. Barich v. Pennsylvania Fire Insurance Co., 191 Minn. 628, 255 N.W. 80, 81. Plaintiff is aided by the presumption of Cook's innocence and good faith. 2 Dunnell, Minnesota Digest, 2nd Ed., sec. 3437.

8. In the Barich case, supra, the Minnesota Supreme Court commented as follows:
   "Instead of having the aid of any presumption, its claim was opposed by the presumption of defendant's innocence. So in order to get to the jury, defendant had to do more than show some circumstances consistent with its claim that plaintiff was the incendiary. * * * It had to show not only that the fire was set but that plaintiff was intentionally responsible for its setting. As matter of law, its defense was not sustained unless plaintiff's complicity was indicated

The conclusion reached is no reflection on the ability and integrity of the experts called by defendants. The interest of the city of St. Paul and the state of Minnesota in the case was persuasive, but not sufficiently convincing to require the trier of the facts to further burden the insured with the inference that he is charged with a crime the state never felt warranted in pressing.

Plaintiff may present findings of fact, conclusions of law order for and form of judgment consistent with the foregoing.

Defendants may have an exception

by the evidence to such an extent as to support a reasonable inference of his guilt. Failing in that as it did, the evidence was not inconclusive, but, on the contrary, conclusive against defendant for the simple reason that upon it was

the burden of proof. Circumstances which merely create suspicion, but do not justify affirmative and reasonable deduction, are not enough to sustain decision against the negative."