STATE, RESPONDENT, *v.* GRIFFIN, APPELLANT.

(No. 6,019.)

(Submitted November 6, 1926.  Decided November 12, 1926.)

[251 Pac. 143.]

*Intoxicating Liquor—Unlawful Possession—Circumstantial Evidence—Sufficiency—Conflict in Evidence—Appeal—Evidence of State Deemed True.*

Intoxicating Liquor—Unlawful Possession—Circumstantial Evidence—Sufficiency.
1. Under the rule that when conviction for crime is sought on circumstantial evidence, all the circumstances proved must be consistent with each other and with the hypothesis that the accused is guilty and inconsistent with any other rational hypothesis, evidence in a prosecution for the unlawful possession of a still and intoxicating liquor, showing footprints in the snow from the cabin in which the still and liquor were found to the bunkhouse occupied by defendant alone, the presence of a section of rubber hose used for siphoning moonshine whisky in the bunkhouse, unexplained, *etc.*, *held* sufficient to warrant conviction.

Same—Conviction on Conflicting Evidence—Evidence of State Taken as True on Appeal
2. On review of the evidence in a criminal case where any conflict has been resolved by the jury under proper instructions, in favor of the state, the evidence on the part of the state will be considered as true on appeal.

[1]   Criminal Law, 16 C. J., sec. 1568, p. 764, n. 54.
[2]   Criminal Law, 17 C. J., sec. 3569, p. 223, n. 40, 42.   Intoxicating Liquors, 33 C. J., sec. 502, p. 758, n. 80;  sec. 505, p. 761, n. 53.

*Appeal from District Court, Park County; H. J. Miller, Judge.*

R. M. GRIFFIN was convicted of possessing a still and intoxicating liquor, and appeals from the judgment and from the order denying him a new trial.   Affirmed.

*Messrs. Burnett & Vetleson,* for Appellant, submitted a brief; *Mr. Martin Vetleson* argued the cause orally.

2.  See 2 R. C. L. 194.

*Mr. L. A. Foot,* Attorney General, and *Mr. S. R. Foot,* Assistant Attorney General, submitted a brief; *Mr. S. R. Foot* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

R. M. Griffin was convicted on April 10, 1926, of the unlawful possession of a still and a quantity of intoxicating liquor.

On the trial, after the taking of testimony was closed, defendant moved for a directed verdict, which motion was overruled; thereafter he offered two instructions which, in effect, were peremptory directions to acquit the defendant; these were refused. After judgment, defendant moved for a new trial, which motion was denied.

Defendant has appealed from the judgment and order denying him a new trial. He makes seven specifications of error, based upon the rulings above indicated, but they present but the single question, which is, as stated by counsel, "whether or not the evidence in the case is sufficient upon any theory to sustain the verdict of conviction."

The evidence connecting the defendant with the crime [1] charged is wholly circumstantial. Briefly stated, the case made by the state is as follows: At 4 A. M., December 2, 1925, the sheriff of Park county, accompanied by two deputies, arrived at a log cabin situated about one-half mile from the ranchhouse of one James Proffitt in Park county. They entered the cabin, and there found a complete still set up on a stone fireplace in which a fire still burned; willow wood for firing; three boxes of mash, one of which was just set and still warm; and a barrel containing thirty gallons of "first run" moonshine whisky. The night was dark, the ground muddy, with occasional patches of snow. Toward daylight snow began to fall but melted as it reached the ground. By the aid of a flashlight the officers discovered a single set of fresh "man tracks" leading to and from the cabin, and wagon tracks leading to and from a pile of willow wood near by. At dawn, the foot-

prints were traced directly to a bunkhouse standing about forty feet from the Proffitt house. There was a little straw or hay about the bunkhouse, but not enough to obscure tracks; there were no other tracks about the bunkhouse, though there were footprints from the house to the barn; the wagon tracks led between the barn and the woodpile near the cabin. Entering the bunkhouse, the officers found the defendant in his bunk with his head covered; it was then about 7 A. M. The defendant had on a pair of corduroy pants on which mash was splattered and which smelled strongly of moonshine whisky. Hanging on the wall was a section of rubber hose such as is used in siphoning moonshine whisky, and which, when straightened out, yielded about a spoonful of liquor.

The defense proved that the defendant worked during the fall of 1925 with a threshing crew in the vicinity of Clyde Park, to the east and to the west of that town; that the threshing was completed at the Proffitt place three or four days prior to December 2, and that the defendant there took a severe cold and suffered from rheumatism; he therefore remained at Proffitt's when the threshing-machine moved on.

Proffitt, a one-legged man, was the only other man on the ranch, but was away from the place during the day prior to defendant's arrest; before he left, defendant told him that he (Griffin) was going to cut brushwood that day. The defendant testified that he did cut wood, but did not haul any wood that day. Both Proffitt and the defendant testified that defendant spent the evening at the Proffitt house, leaving at about 10 o'clock, when he told Proffitt that he was going to the bunkhouse and to bed. Proffitt testified that defendant always wore "bib" overalls, and that he never saw mash on them.

Defendant testified that he had no mash on his pants at the time of his arrest; asked as to whether he was then wearing the same pants he usually wore, he answered, "I wore the same; corduroy pants they were, the same overalls I had worn all fall." He testified that he left his overshoes at the Proffitt house that evening and got them there in the presence of the

sheriff the next morning. No mention is made in his testimony of the piece of hose found in his sleeping quarters.

It will be noted that the testimony on the part of the de-fendant creates but slight conflict in the evidence. It is contended by counsel for defendant that, as defendant was working with a threshing crew up to a few days prior to his arrest, he could not have operated the still prior to that time, and that the evidence therefore points to someone other than defendant as the guilty party; but the record fails to show that at any time during the fall the defendant was too far from the still to have visited it nightly, if such operation required constant attention, and again the record does not disclose that such attention was necessary. It may well be that between the time mash is "set" and is ready for distillation it requires no attention, and, if such is the fact, discretion would dictate that the owner remain away during such period.

Again it is contended that the testimony concerning foot-prints has little weight, as the sheriff could not say that they corresponded with those made by defendant; but it must be remembered that the evidence disclosed fresh tracks of but one man passing between the bunkhouse and the stillhouse, that the defendant was the only man at the bunkhouse, and that the only other man on the place had but one leg. Counsel stress defendant's testimony regarding his overshoes, and con-tend that, if the tracks were those of the defendant, they must of necessity have first gone to the Proffitt house, where his overshoes were recovered on the morning of his arrest, but the record is barren of any suggestion that the tracks followed were made by a man wearing overshoes. Aside from these tracks, which point to the defendant, and to him alone, as the guilty party, the most incriminating piece of evidence against him was the section of hose just recently used in the manufacture of moonshine whisky; yet he made no attempt to explain its presence in his sleeping quarters. Such conflict as appears in the evidence was resolved by the jury in favor of the state's testimony.

The rule in this state is that, when a conviction is sought upon circumstantial evidence, "all the circumstances proved must be consistent with each other and with the hypothesis that the accused is guilty, and at the same time inconsistent with any other rational hypothesis." (*State* v. *Suitor,* 43 Mont. 31, Ann. Cas. 1912C, 230, 114 Pac. 112; *State* v. *Riggs,* 61 Mont. 25, 201 Pac. 272.) But, on a review of the evidence [2] on appeal, where any conflict in the testimony has been resolved by the jury, under proper instruction by the court, in favor of the state's testimony, the evidence on the part of the state is considered as true. (*State* v. *Chevigny,* 48 Mont. 382, 138 Pac. 257; *State* v. *Woods,* 54 Mont. 193, 169 Pac. 39.)

Applying these rules to the evidence digested above, we are of the opinion that such evidence is amply sufficient to support the verdict of guilty; all circumstances proved are consistent with one another and consistent with the hypothesis of guilt, and there appears to be no other rational hypothesis on which those circumstances could be explained.

For the reasons stated, the judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES GALEN and STARK and HONORABLE HENRY G. RODGERS, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, concur.